UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| STEFAN TOUANI and NICK MAZZA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LIMBLE SOLUTIONS, INC.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING [5] STIPULATED MOTION FOR SETTLEMENT AGREEMENT**<br><br>Case No. 2:26-cv-00033<br><br>District Judge David Barlow |

Before the court is the parties' Stipulated Motion for Approval of FLSA Settlement Agreement (the "Motion").[1]

## BACKGROUND

Plaintiffs are former employees of Defendant Limble Solutions, Inc. ("Limble").[2] They allege that Limble violated the Fair Labor Standards Act (FLSA) by misclassifying certain employees as exempt from overtime compensation and by failing to pay non-exempt employees the amount they were owed.[3] Defendant denies these allegations.[4] Prior to filing this lawsuit, plaintiffs' counsel investigated the named Plaintiffs' claims and the possibility of a collective action suit.[5] In May 2025, Plaintiffs informed Limble of the allegations, which Limble denied.[6]

---

[1] Unopposed Motion for Approval of FLSA Settlement Agreement ("Settlement Motion"), ECF No. 5, filed Jan 13, 2026.
[2] Declaration of Sally J. Abrahamson ("Abrahamson Dec.") ¶ 7, ECF No. 5-3, filed Jan. 13, 2026.
[3] *Id.*
[4] Settlement Motion 2.
[5] *Id.*
[6] *Id.*

1

After engaging in informal discovery exchange and pre-litigation negotiations, the parties mediated their disputes in October 2025.[7] They subsequently executed the settlement agreement that is now before the court.[8]

Under the proposed settlement agreement, Limble would pay $255,000 into a settlement fund to settle all applicable claims.[9] One-third of the settlement amount, $85,000, would go to Plaintiffs' attorneys as fees.[10] Plaintiffs' counsel would also receive up to $7,500 in costs, and the representative plaintiffs would each receive a $10,000 service award.[11] The remainder of the settlement fund would be divided up among collective members based on the number of weeks they worked and the amount of wages they are allegedly owed from the period of June 17, 2023, to October 27, 2025.[12] The settlement agreement states that the collective will consist of fifty-seven individuals who worked for Defendant in specified positions during the relevant period.[13] A check will be sent to each one of these prospective collective members for the amount they are owed under the settlement agreement.[14] The member may opt in to the lawsuit by cashing or depositing their check within 120 days, upon which they will have forfeited their FLSA claims against Limble.[15] After the check-cashing deadline passes, Plaintiffs will file with the court a list of collective members who negotiated their settlement checks.[16]

---

[7] *Id.*
[8] *Id.*
[9] Joint Stipulation of Settlement and Release Agreement ("Settlement Agreement") 3, ECF No 5-1, filed Jan. 13, 2026.
[10] *Id.* at 5.
[11] *Id.*
[12] *Id.* 2, 6.
[13] *Id,* at 2.
[14] *Id.* at 9.
[15] *Id.* at 9, 10.
[16] *Id.* at 10.

## STANDARD

The FLSA authorizes plaintiffs to bring a collective action for overtime wages on behalf of "themselves and other employees similarly situated."[17] "Unlike in a class action under Federal Rule of Civil Procedure 23, parties are added to and bound by a FLSA collective action on an 'opt-in' rather than 'opt-out' basis."[18] Courts undertake a three-step inquiry when determining whether to approve an FLSA settlement agreement.[19] To determine whether a proposed agreement should be granted court approval,[20] the court must determine (1) "whether the settlement resolves a *bona fide* dispute," (2) whether the settlement is "fair and reasonable to all parties concerned," and (3) whether the settlement contains a "reasonable award of attorneys' fees."[21]

## DISCUSSION

### I.  Bona Fide Dispute

A *bona fide* dispute is "one that involves 'factual issues rather than legal issues such as the statute's coverage and applicability."[22] The *bona fide* dispute requirement prevents courts from approving settlements when "no question exists that the plaintiffs are entitled under the statute to the compensation they seek."[23] Otherwise, implementation of FLSA standards would

---

[17] 29 U.S.C. § 216(b).
[18] *Pichler v. Cotiviti, Inc*, No. 2:23-CV-0884-AMA, 2024 WL 3089897, at *3 (D. Utah 2024); *see also* 29 U.S.C. § 216 (b).
[19] *Bingham v. doTERRA Int'l, LLC*, No. 2:23-CV-00707-DBB-DBP, 2025 WL 1474036, at *1 (D. Utah May 22, 2025).
[20] District courts in the Tenth Circuit are divided on whether judicial approval is necessary for FLSA settlement agreements. *Bingham*, 2025 WL 1474036, at *1 n.11. In this case, the parties have agreed to seek court approval as part of their agreement, *see* Settlement Motion 5–6, so the court will consider their agreement.
[21] *Keel v. O'Reilly Auto Enters., LLC*, No. 2:17-CV-667, 2018 WL 10509413, at *2 (D. Utah May 31, 2018) (emphasis in original); *see also Bingham*, 2025 WL 1474036, at *1.
[22] *Cazeau v. TPUSA, Inc*. (*Cazeau I*), No. 218CV00321RJSCMR, 2020 WL 3605652, at *3 (D. Utah July 2, 2020) (quoting *Keel*, 2018 WL 10509413, at * 2).
[23] *Id.* (quoting *Collins v. Sanderson Farms, Inc*., 568 F. Supp. 2d 714, 719 (E.D. La. 2008)).

be frustrated because employers could "extract a disproportionate discount on FLSA wages in exchange for an attenuated defense to payment."[24] "Thus, for a bona fide dispute to exist, there must be some doubt concerning whether Plaintiffs may succeed on their FLSA claims."[25]

"The parties bear the burden of demonstrating that a bona fide dispute exists, and they can satisfy that burden by providing the court with sufficient information of the bona fide dispute's existence."[26] Relevant information includes:

> (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employee; (3) the employer's reasons for disputing the employee's right to a minimum wage or overtime; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.[27]

In this case, the parties have provided sufficient information to indicate the existence of a bona fide dispute. Plaintiffs allege that Limble misclassified employees who worked as sales development representatives ("SDR") as exempt from FLSA overtime requirements.[28] They claim that the employees in question routinely worked five hours or more of overtime in a week.[29] Defendant Limble maintains that the employees were properly classified as exempt and that the SDRs typically did not work overtime.[30] The parties state that they "fundamentally disagree[]" about the number of hours that the SDRs worked during this time period.[31] These

---

[24] *Id.* (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. April 19, 2010)).
[25] *Id.*
[26] *Id.*
[27] *Bingham*, 2025 WL 1474036, at *2 (quoting *Felix v. Thai Basil at Thornton, Inc.*, No. 14-cv-02567-MSK-CBS, 2015 WL 2265177, at *2 (D. Colo. May 6, 2015).
[28] Settlement Motion 8.
[29] *Id.*
[30] *Id.*
[31] *Id.*

issues raise at least some doubt about Plaintiffs' ability to succeed on their FLSA overtime claims, so they are sufficient to show the existence of a bona fide dispute.

**II.      Fair and Reasonable**

An agreement is "fair and reasonable" if it "provide[s] adequate compensation to the employees" without frustrating "FLSA policy rationales."[32] Courts considering the fairness of an FLSA settlement agreement can also look to "the factors for evaluating the fairness of a class action settlement" under Rule 23(e) of the Federal Rules of Civil Procedure.[33] In the Tenth Circuit, those factors are:

> (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.[34]

Rule 23(e) also provides some fairness considerations, including whether, "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . and (D) the proposal treats class members equitably relative to each other."[35] Generally, a court may "presume the settlement to be fair, adequate, and reasonable" when it "resulted from arm's length negotiations between experienced counsel after significant discovery."[36]

---

[32] *Keel v. O'Reilly Auto Enters.*, LLC, No. 2:17-CV-667, 2018 WL 10509413, at *3 (D. Utah May 31, 2018) (quoting *Morton v. Transcend Servs., Inc.*, No. 15-CV-01393-PAB-NYW, 2017 WL 977812, at *2 (D. Colo. Mar. 13, 2017)).
[33] *Id.*
[34] *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).
[35] Fed. R. Civ. P. 23(e).
[36] *Acevedo v. Sw. Airlines Co.*, No. 1:16-CV-00024-MV-LF, 2019 WL 6712298, at *2 (D.N.M. Dec. 10, 2019), report and recommendation adopted, No. 1:16-CV-00024-MV-LF, 2020 WL 85132 (D.N.M. Jan. 7, 2020) (quoting *Lucas v. Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006)).

Here, these factors weigh in favor of approving the settlement. Both sides of the dispute are represented by counsel, and they engaged in informal discovery during their settlement negotiations.[37] They discussed and debated the merits of the case for months before participating in a day-long mediation before a neutral mediator.[38] As discussed above, real questions of fact exist that put the outcome of continued litigation in doubt. The proposed settlement agreement also treats the prospective collective members equitably, dividing the settlement fund according to the number of weeks they worked during the relevant period.[39] The settlement appears fair and reasonable, and Plaintiffs have represented that the recovery is a substantial portion of what they would expect to receive if they prevailed at trial.[40]

### III. Attorneys' Fees

The FLSA allows for the payment of a "reasonable attorney's fee."[41] When a common fund is created for settlement, "the percentage reflected in a common fund award must be reasonable."[42] In making this determination, the Tenth Circuit has instructed courts to consider twelve factors that apply to percentage fee awards in common fund cases.[43] But all twelve factors are rarely applicable in a single common-fund situation.[44] The twelve factors are:

> (1) time and labor required, (2) novelty and difficulty of the question presented by the case, (3) skill requisite to perform the legal service properly, (4) preclusion of other employment by the attorneys due to acceptance of the case, (5) customary fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the client or circumstances, (8) amount involved and results obtained, (9)

---

[37] Settlement Motion 9.
[38] *Id.*
[39] *Id.* at 10.
[40] *Id.* at 9.
[41] 29 U.S.C. § 216(b)
[42] *Cazeau v. TPUSA, Inc.* ("*Cazeau II*"), No. 218CV00321RJSCMR, 2021 WL 1688540, at *8 (D. Utah Apr. 29, 2021) (quoting *Brown v. Phillips Petrol. Co.*, 838 F.2d 451, 454 (10th Cir. 1988)).
[43] *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994).
[44] *Cazeau II*, 2021 WL 1688540, at *8 (quoting *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993)).

experience, reputation and ability of the attorneys, (10) the "undesirability" of the case, (11) nature and length of the professional relationship with the client, and (12) awards in similar cases.[45]

In this case, the settlement agreement approves attorneys' fees of up to one-third of the value of the common fund.[46] Several of the above factors indicate that this amount is reasonable. As to the first factor, the parties negotiated for months prior to reaching their agreement, including informal discovery, damage calculations, and mediation.[47] For the fifth factor, courts routinely find that contingent fees of one-third of a settlement amount are reasonable.[48] Similarly, for the sixth factor, the uncertain nature of a contingency fee makes this amount reasonable because Plaintiffs' counsel would have received nothing had they not prevailed and would have lost their litigation expenses, making the litigation a calculated risk.[49] Plaintiffs' attorneys are also experienced in this type of litigation and have a good reputation, which supports the ninth factor.[50] Finally, as to the results obtained, Plaintiffs' counsel has represented to the court that the settlement amount exceeds the collective members' lost wages, a successful recovery.[51]

Overall, the requested attorneys' fee is reasonable in light of the relevant factors. With respect to costs, Plaintiffs' counsel seeks $3,808.74.[52] The proposed settlement agreement

---

[45] *Id.* (quoting *Gottlieb*, 43 F.3d at 482 n.4).
[46] Joint Stipulation of Settlement and Release Agreement ("Settlement Agreement") 5, ECF No 5-1, filed Jan. 13, 2026.
[47] Settlement Motion 14.
[48] *Cazeau II*, 2021 WL 1688540, at *9 n.97 (collecting cases).
[49] *Id.* at 10.
[50] *See* Abrahamson Dec. ¶¶ 4–6.
[51] Settlement Motion 16.
[52] *Id.* at 17.

permits costs of up to $7,500,[53] and Plaintiffs' counsel has presented evidence to support their request.[54] Therefore, the request for fees and costs is reasonable.

## IV. Notice and Certification

Although the substance of the proposed settlement agreement is reasonable under the three-step process described above, the court must address a few additional issues about the notice and implementation processes it describes.

### A. Conditional Certification

First, the parties have not requested conditional certification of the proposed collective. Section 216(b) permits FLSA actions to be maintained on behalf of the named plaintiffs and "other employees similarly situated,"[55] but it does not define the term. The Tenth Circuit has approved an *ad hoc* approach to determine "whether plaintiffs are 'similarly situated' for purposes of § 216(b)."[56] Under this approach, courts typically make a preliminary "notice stage" determination about whether plaintiffs are similarly situated before making a more detailed final determination following discovery.[57] The initial conditional certification requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."[58]

Section 216(b) actions operate on an "opt in" basis, so FLSA conditional certification "does not produce a class with an independent legal status, or join additional parties to the

---

[53] Settlement Agreement 5.
[54] Abrahamson Dec. ¶ 30.
[55] 29 U.S.C. § 216(b).
[56] *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102, 1105 (10th Cir. 2001).
[57] *Id.*
[58] *Id.* (quoting *Vaszlavik v. Storage Tech. Corp.,* 175 F.R.D. 672, 678 (D. Colo. 1997)).

action."[59] Instead, its sole consequence "is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court."[60] Here, the court has not certified any collective, and the parties have not moved for conditional certification or addressed the issue in their motion.[61]

The plain language of § 216(b) includes no requirements for any sort of collective certification.[62] Indeed, this court has previously said that "the FLSA does not require certification" and that "plaintiffs can opt into a collective action without conditional certification."[63] However, it is a statutory requirement that prospective collective action members be similarly situated, and conditional certification is generally used to satisfy this requirement.[64] The settlement motion makes no arguments showing why the fifty-seven prospective collective members are similarly situated except to say that they were all SDRs.[65] The parties have also presented no authority indicating that a court may authorize a court-approved FLSA notice without at least a conditional certification.

### B.     Opt-In Process

Second, the proposed settlement agreement would have prospective collective members opt in to the agreement by signing a check within a 120-day period.[66] After this period expired, Plaintiffs' counsel would file with the court a list of everyone who opted in.[67] But § 219(b) states

---

[59] *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013).
[60] *Id.*
[61] *See generally* Settlement Motion.
[62] *See* 29 U.S.C. § 216(b).
[63] *Cazeau v. TPUSA, Inc.* ("*Cazeau I*"), No. 218CV00321RJSCMR, 2020 WL 3605652, at *3 (D. Utah July 2, 2020).
[64] *Id.*
[65] Settlement Motion 3.
[66] Settlement Agreement 9.
[67] *Id.* at 10.

9

that no employee is a "party plaintiff" in an FLSA collective action suit until "he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."[68] Other district courts in the Tenth Circuit have explained that, "because a named plaintiff's suit becomes moot when his individual claim is satisfied . . . he is not authorized to settle claims on behalf of putative class members who have yet to opt in."[69] Therefore, "the Court cannot sustain a motion for final settlement approval" if putative class members have not yet opted in.[70]

The parties argue that a "one-step approval" process is appropriate here, but they do not directly address the issues of mootness and statutory authority mentioned above.[71] The cases they cite or include as exhibits do not clarify the matter, as they take different positions and often do not analyze the question at all.[72] This court has previously declined to approve an FLSA settlement agreement that proposed a similar opt-in mechanism because the signed checks would not be filed with the court prior to approval of the agreement.[73]

Before the court will approve this final settlement, the parties must move for conditional certification and either (1) propose a notice procedure that would allow putative collective

---

[68] 29 U.S.C. § 216(b).
[69] *Christeson v. Amazon.com.ksdc, LLC*, No. CV 18-2043-KHV, 2019 WL 354956, at *4 (D. Kan. Jan. 29, 2019); *see also Prim v. Ensign United States Drilling, Inc*., No. 15-CV-02156-PAB-KMT, 2018 WL 3729515, at *2 (D. Colo. Aug. 3, 2018).
[70] *Id.*
[71] *See* Settlement Motion 5–7.
[72] *See Bingham v. doTERRA Int'l, LLC*, No. 2:23-CV-00707-DBB-DBP, 2025 WL 1474036, at *1 (D. Utah May 22, 2025) (approving a settlement agreement only after collective members opted in); *Stenulson v. ROI Solutions* Order and Motion ("*Stenulson* Order"), ECF No. 5-5, filed Jan. 13, 2026 (same); *but see Abernathy v. Molina Healthcare* Final Approval ("*Abernathy* Order"), ECF No. 5-4, filed Jan. 13, 2026 (allowing opt-ins by signed checks to be filed after approval*); Kennedy v. Mountainside Pizza, Inc*., No. 19-CV-01199-CMA-STV, 2021 WL 5882138, at *3 (D. Colo. Dec. 13, 2021) (same).
[73] *Cazeau v. TPUSA, Inc*. ("*Cazeau* I"), No. 218CV00321RJSCMR, 2020 WL 3605652, at *6 (D. Utah July 2, 2020).

members to opt-in prior to the final approval or (2) submit a new motion explaining—with authoritative caselaw—how § 219(b) permits the court to simultaneously resolve the named plaintiffs' claims and authorize a binding settlement agreement on behalf of putative collective members who have not yet joined the case as parties.

## ORDER

The parties' [5] Stipulated Motion to Approve Settlement is DENIED without prejudice.

Signed January 30, 2026.

BY THE COURT

_____
David Barlow
United States District Judge