UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| STEFAN TOUANI and NICK MAZZA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LIMBLE SOLUTIONS, INC.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING [12] RENEWED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT**<br><br>Case No. 2:26-cv-00033<br><br>District Judge David Barlow |

Before the court is the parties' Unopposed Renewed Motion for Approval of FLSA Settlement Agreement (the "Motion").[1]

**BACKGROUND**

Plaintiffs are former employees of Defendant Limble Solutions, Inc. ("Limble").[2] They allege that Limble violated the Fair Labor Standards Act (FLSA) by misclassifying certain employees as exempt from overtime compensation and by failing to pay non-exempt employees the amount they were owed.[3] In May 2025, Plaintiffs informed Limble of the allegations, which Limble denied.[4] The parties subsequently executed the settlement agreement that is now before the court.[5]

---

[1] Unopposed Renewed Motion for Approval of FLSA Settlement Agreement ("Renewed Settlement Motion"), ECF No. 12, filed Mar. 2, 2026.
[2] Declaration of Sally J. Abrahamson ("Abrahamson Dec.") ¶ 7, ECF No. 5-3, filed Jan. 13, 2026.
[3] *Id.*
[4] *Id.*
[5] *Id.*

1

Under the proposed settlement agreement, Limble would pay $255,000 into a settlement fund to settle all applicable claims.[6] The settlement agreement states that the collective will consist of fifty-seven individuals who worked for Defendant in specified positions during the relevant period.[7] A check will be sent to each one of these prospective collective members for the amount they are owed under the settlement agreement.[8] The member may opt in to the lawsuit by cashing or depositing their check within 120 days, upon which they will have forfeited their FLSA claims against Limble.[9] After the check-cashing deadline passes, Plaintiffs will file with the court a list of collective members who negotiated their settlement checks.[10]

The parties submitted their first Stipulated Motion to Approve Settlement on January 13, 2026.[11] After reviewing the first motion and the proposed Settlement Agreement, the court concluded that the parties had demonstrated the existence of a bona fide dispute, that the proposed agreement was fair and reasonable, and that the request for attorney fees was reasonable.[12] The court noted that the parties' proposed notice and opt-in process raised procedural concerns under 29 U.S.C. § 216(b) because it asked the court to approve the settlement agreement before any prospective collective members received notice or opted in.[13] The court denied the motion without prejudice and ordered the parties to move for conditional certification and either "(1) propose a notice procedure that would allow putative collective

---

[6] Joint Stipulation of Settlement and Release Agreement ("Settlement Agreement") 3, ECF No 5-1, filed Jan. 13, 2026.

[7] *Id.* at 2.

[8] *Id.* at 9.

[9] *Id.* at 9, 10.

[10] *Id.* at 10.

[11] Stipulated Motion for Approval of FLSA Settlement Agreement ("First Settlement Motion"), ECF No. 5, filed Jan. 13, 2026.

[12] Order Denying Stipulated Motion for Settlement Agreement ("Order") 3–8, ECF No. 11, entered Jan. 30, 2026.

[13] *Id.* at 9–10.

members to opt-in prior to the final approval or (2) submit a new motion explaining—with authoritative caselaw—how § 219(b) permits the court to simultaneously resolve the named plaintiffs' claims and authorize a binding settlement agreement on behalf of putative collective members who have not yet joined the case as parties."[14]

## STANDARD

The FLSA authorizes plaintiffs to bring a collective action for overtime wages on behalf of "themselves and other employees similarly situated."[15] "Unlike in a class action under Federal Rule of Civil Procedure 23, parties are added to and bound by a FLSA collective action on an 'opt-in' rather than 'opt-out' basis."[16] Courts undertake a three-step inquiry when determining whether to approve an FLSA settlement agreement.[17] To determine whether a proposed agreement should be granted court approval, the court must determine (1) "whether the settlement resolves a *bona fide* dispute," (2) whether the settlement is "fair and reasonable to all parties concerned," and (3) whether the settlement contains a "reasonable award of attorneys' fees."[18]

---

[14] *Id.* at 10.
[15] 29 U.S.C. § 216(b).
[16] *Pichler v. Cotiviti, Inc*, No. 2:23-CV-0884-AMA, 2024 WL 3089897, at *3 (D. Utah 2024); *see also* 29 U.S.C. § 216 (b).
[17] *Bingham v. doTERRA Int'l, LLC*, No. 2:23-CV-00707-DBB-DBP, 2025 WL 1474036, at *1 (D. Utah May 22, 2025).
[18] *Keel v. O'Reilly Auto Enters., LLC*, No. 2:17-CV-667, 2018 WL 10509413, at *2 (D. Utah May 31, 2018) (emphasis in original); *see also Bingham*, 2025 WL 1474036, at *1.

## DISCUSSION

### I.      Similarly Situated

Section 216(b) permits FLSA actions to be maintained on behalf of the named plaintiffs and "other employees similarly situated."[19] The Tenth Circuit has approved an *ad hoc* approach to determine "whether plaintiffs are 'similarly situated' for purposes of § 216(b)."[20] Under this approach, courts typically make a preliminary "notice stage" determination about whether plaintiffs are similarly situated before making a more detailed final determination following discovery.[21] The initial conditional certification requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."[22] Courts in this district have held that, when using the *ad hoc* approach in the settlement context, "conditional certification satisfies the FLSA's similarly situated requirement and final certification is unnecessary."[23]

In their Renewed Settlement Motion, the parties stipulate to conditional certification for settlement purposes.[24] They also argue that the putative collective members were subject to a common policy or plan because Defendant had a policy of misclassifying its sales development representatives as exempt.[25] Because of this, those employees were not paid the overtime premiums they were owed under the FLSA.[26] These allegations are sufficient to satisfy the

---

[19] 29 U.S.C. § 216(b).
[20] *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102, 1105 (10th Cir. 2001).
[21] *Id.*
[22] *Id.* (quoting *Vaszlavik v. Storage Tech. Corp.,* 175 F.R.D. 672, 678 (D. Colo. 1997)).
[23] *Cazeau v. TPUSA, Inc.* (*Cazeau I*), No. 218-CV-00321-RJS-CMR, 2020 WL 3605652, at *3 (D. Utah July 2, 2020).
[24] Renewed Settlement Motion 7–8.
[25] *Id.* at 8.
[26] *Id.*

conditional certification standard under the *ad hoc* approach,[27] so they are enough for the court to determine that the prospective collective members are "similarly situated" as required by § 216(b).[28]

## II.   Opt-In Process

In response to the court's order that they either revise the proposed notice procedure or address the court's concerns regarding the current notice procedure using authoritative caselaw, the parties elected to "pursue the second path."[29] Section 216(b) allows employees to maintain an FLSA action "on behalf of other employees similarly situated."[30] However, the statute also provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."[31] As was previously noted, other courts in the Tenth Circuit have refused to approve notice procedures like the one proposed here because "a named plaintiff's suit becomes moot when his individual claim is satisfied . . . he is not authorized to settle claims on behalf of putative class members who have yet to opt in."[32]

The parties attempt to address the court's concerns by emphasizing that the settlement agreement is structured so that no individual will be bound or will release any rights unless they affirmatively opt in to the case.[33] The parties also argue that concerns about mootness improperly

---

[27] *Thiessen v. Gen. Elec. Cap. Corp.,* 267 F.3d 1095, 1102 (10th Cir. 2001) (quoting *Vaszlavik v. Storage Tech. Corp.,* 175 F.R.D. 672, 678 (D. Colo. 1997)) (In making an initial "notice stage" determination of whether plaintiffs are similarly situated, "a court " 'require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'").

[28] 29 U.S.C. § 216(b); *Cazeau I*, 2020 WL 3605652, at *3.

[29] Renewed Settlement Motion 1.

[30] 29 U.S.C. § 216(b).

[31] *Id.*

[32] Order 10 (quoting *Christeson v. Amazon.com.ksdc, LLC*, No. CV 18-2043-KHV, 2019 WL 354956, at *4 (D. Kan. Jan. 29, 2019)).

[33] Renewed Settlement Motion 2.

conflate class action suits—where it is improper for a named plaintiff to settle on behalf of a class after resolving his or her own claims—with FLSA suits, where each collective member must choose to opt in before being bound by any settlement.[34] Finally, the parties note that nothing in the FLSA dictates the manner or timing of when an individual must become a party plaintiff.[35] They argue that the proposed method result in greater participation, increased efficiency, and lower costs for the collective members.[36]

The court agrees that the proposed Settlement Agreement would not bind any individuals who do not affirmatively opt in. However, this does not fully resolve the issues raised in the court's previous order. The problem with the parties' proposed notice method is not that it could bind individuals against their will. Instead, the issue is that the FLSA dispute ends once the Settlement Agreement is approved, so if no collective members have opted in at that time, there can be no FLSA collective action to settle.[37]

The FLSA allows an employee to maintain an action against an employer "for and in behalf of himself . . . and other employees similarly situated," but only if the similarly situated employees "gives [] consent in writing to become such a party and such consent is filed in the court in which such action is brought."[38] In other words, if a plaintiff seeks to maintain an FLSA collective action, the court must first determine whether the proposed collective members are

---

[34] *Id.* at 2–3.
[35] *Id.* at 10.
[36] *Id.* at 11.
[37] *See Prim v. Ensign United States Drilling, Inc.*, No. 15-CV-02156-PAB-KMT, 2018 WL 3729515, at *2 (D. Colo. Aug. 3, 2018) (quoting *Perez v. Avatar Props., Inc.*, 2008 WL 4853642, at *3 (M.D. Fla. Nov. 6, 2008)) (alterations in original) ("[a]pproving a global settlement with just the involvement of one plaintiff and then giving notice and an opportunity to opt in to an already settled matter, undercuts [the] critical distinction [between Rule 23 class actions and FLSA collective actions] and the reasons justifying the distinction in the first place. Simply put: because Plaintiff has no independent right to represent others that have yet to appear, Plaintiff has no authority to settle their as yet unasserted claims.").
[38] 29 U.S.C.A. § 216(b).

6

"similarly situated" as required by § 216(b).[39] Then, individuals who are "similarly situated"

may elect to opt in to the litigation.[40] At that point, any resolution of the case binds all collective

members who have opted in.

In this case, the parties ask the court to issue its final approval of the proposed Settlement

Agreement *before* any potential collective members have opted in.[41] Once the court gives its

final approval, the matter at hand will be settled and resolved.[42] After this approval, any attempts

by putative collective members to join the action under § 216(b) by filing their consent with the

court would seem to be moot because the case was already resolved.[43] Thus, there could be no

collective action to settle because no "similarly situated" individuals had opted in and become

party plaintiffs at the time the named plaintiffs'' claims were resolved.[44] Furthermore, the parties

are asking the court to "order" all of the terms of the Settlement Agreement and to retain

jurisdiction to supervise and enforce the Agreement.[45] It is unclear if and how the court could

approve and enforce the agreement as to individuals who are not even parties to the case at the

---

[39] *See Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).

[40] 29 U.S.C.A. § 216(b).

[41] *See generally* Renewed Settlement Motion.

[42] The proposed Settlement Agreement states that "the Parties have agreed to fully and finally resolve this matter on the terms and conditions described herein" and that "[a]s of the Effective Date, the matter is resolved." *See* Settlement Agreement 1, 11. The "effective date" is defined as "the date the Final Approval Order is entered by the Court." *Id.* at 2. The parties argue that the named plaintiffs are part of the collective, so their claims will be satisfied simultaneously with those of other collective members. Renewed Settlement Motion 4. But the proposed Agreement also states that collective members release their claims by signing the settlement checks, checks that will later be filed with the court as required under § 219(b). Settlement Agreement 10; Renewed Settlement Motion 12. Thus, the Agreement would have the collective members release their claims as part of the collective action settlement and resolve all disputes before joining the case and before a collective action is even formed.

[43] *See Caldwell v. Mercury Mgmt. LLC*, No. 24-2210-DDC-RES, 2025 WL 1939935, at *5 (D. Kan. July 15, 2025) ("If the court has approved the settlement finally, and the parties executed the agreement, then Mr. Caldwell already would have settled his claim. And the possible collective action is moot.").

[44] *Christeson v. Amazon.com.ksdc, LLC*, No. CV 18-2043-KHV, 2019 WL 354956, at *3 (D. Kan. Jan. 29, 2019) ("The FLSA provides that an employee may bring a collective action on behalf of other employees who are "similarly situated." A lawsuit brought under the FLSA does not become a "collective" action unless other plaintiffs opt in by giving written consent.").

[45] Settlement Agreement 15–16.

7

time the court enters its order just because those individuals retroactively "opt in" to the already-resolved action. The court's concern in its previous order was not that individuals might be bound without consent, but rather that Plaintiffs have not shown that the FLSA allows a "collective action" settlement procedure where the matter has already been resolved before it becomes a collective action.

Numerous courts in the Tenth Circuit have declined to approve one-step settlement proposals before any collective members opted in.[46] In light of this and the aforementioned mootness concern, the court ordered the parties to explain, with authoritative caselaw, how the court could authorize a binding collective action settlement agreement on behalf of putative collective members who have not opted in and joined the case.[47] The parties did not explain how § 219(b) would allow "collective action" members to retroactively join and be bound by a settlement agreement in a case that was resolved prior to them attempting to join as party plaintiffs. The Renewed Motion references cases in which Tenth Circuit courts approved a "one-step" settlement agreement like the one proposed here,[48] but it does not include any cases in which a court in this circuit addressed the mootness question and still approved a "one-step" settlement proposal.

---

[46] *See*, *e.g.*, *Prim v. Ensign United States Drilling, Inc*., No. 15-CV-02156-PAB-KMT, 2018 WL 3729515, at *2 (D. Colo. Aug. 3, 2018); *Christeson v. Amazon.com.ksdc, LLC*, No. CV 18-2043-KHV, 2019 WL 354956, at *3 (D. Kan. Jan. 29, 2019); *Shepheard v. Aramark Unif. & Career Apparel, LLC*, No. 15-7823-DDC-GEB, 2016 WL 5817074, at *2 (D. Kan. Oct. 5, 2016); *Caldwell v. Mercury Mgmt. LLC*, No. 24-2210-DDC-RES, 2025 WL 1939935, at *5 (D. Kan. July 15, 2025); *Cazeau v. TPUSA, Inc*., No. 218CV00321RJSCMR, 2020 WL 3605652, at *6 (D. Utah July 2, 2020). In addition to the mootness issue, courts have also questioned whether the reasonableness of proposed attorney fees can be determined in a one-step process where the court is asked to approve the settlement before knowing the number of opt-in plaintiffs and the actual amount that will be distributed. *See Pichler v. Cotiviti, Inc*., No. 2:23-CV-00884, 2024 WL 4647871, at *2 (D. Utah Oct. 31, 2024).

[47] Order 11.

[48] Renewed Settlement Motion 3, 10; *Abernathy v Molina Healthcare* Final Approval, ECF No. 5-4, filed Jan. 13, 2026; *Kennedy v. Mountainside Pizza, Inc*., No. 19-CV-01199-CMA-STV, 2021 WL 5882138, at *3 (D. Colo. Dec. 13, 2021).

The parties' contention that their proposed notice method is less expensive, more efficient, and faster[49] is an important consideration and might make a "one-step" notice process more desirable if it were permitted. But the apparent procedural deficiencies under § 219(b) in the parties' current proposal do not allow the court to approve it, regardless of its other advantages. Because the parties were unable to provide the court with any authoritative caselaw showing that the FLSA permits individuals to retroactively opt in to a case that has already been resolved and form a collective action after the approval of a settlement agreement, and because so much contrary authority exists in this circuit, the court will not approve the proposed Settlement Agreement. The court notes that nothing in this order prevents the parties from adjusting the notice procedure and having prospective collective members opt in and file their consent with the court prior to releasing their claims.

### ORDER

The parties' [12] Unopposed Renewed Motion to Approve Settlement is DENIED without prejudice.

Signed April 16, 2026.

BY THE COURT

_____
David Barlow
United States District Judge

---

[49] *Id.* at 11.

9